## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　**Plaintiff,**<br><br>vs.<br><br>**REAL PROPERTY LOCATED AT 200 MEADOWOOD TRAIL, MARTINSVILLE, VIRGINIA, and,**<br><br>**REAL PROPERTY LOCATED AT 2947 EAST 1300 SOUTH, SPANISH FORK, UTAH,**<br><br>　　　　**Defendants in Rem.**<br><br>──────────────<br><br>**JOHN C. VALDEZ, and JOHN J. WIEST,**<br><br>　　　　**Third-Party Claimants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-CV-369-DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on United States' Motion Pursuant to Rule G(8)(c)(ii)(B) to Strike Claims and Answers [ECF No. 10]; and Third-Party Claimants John Valdez and John Weist's Motion to Vacate 1) the Ex Parte Temporary Restraining Order, and 2) the Government's Lis Pendens [ECF No. 29]. On February 25, 2026, the court held a hearing on the motions. At the hearing, the United States was represented by Travis K. Elder, and Third-Party Claimants were represented by Justin D. Heideman. The court took the motions under advisement. After considering the parties' arguments and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

On May 23, 2024, the United States filed this in rem civil forfeiture action against two real properties—2947 East 1300 South, Spanish Fork, Utah, and 200 Meadowood Trail, Martinsville, Virginia—that the United States alleges were purchased using proceeds from an investment fraud scheme Kenny van der Spek and his company, K&K Strategies LLC perpetrated. The Complaint alleges that the subject real properties located in Virginia and Utah had been purchased via interstate wire transfer with the proceeds of a fraud scheme perpetrated by van der Spek, in which van der Spek fraudulently obtained investments by misrepresenting to investors and potential investors that he was matching their investments. The United States filed this action to safeguard the value of the properties for eventual equal distribution among victims pending the completion of a criminal investigation against van der Spek, the filing of criminal charges against him and a criminal forfeiture of the properties.

That same day, on May 23, 2024, the United States recorded a Lis Pendens with the Utah County Recorder with respect to the Spanish Fork Property. On May 28, 2024, the United States posted the Notice of Complaint for Forfeiture physically on the Spanish Fork Property. The United States also complied with all notice requirements for a civil forfeiture action of this nature. On July 23, 2024, John Valdez and John Wiest filed a Notice of Claim and Answer to Complaint for Forfeiture In Rem in this action.

Counsel for the United States requested that Claimants withdraw their claims and answers in this case to allow their compensation to occur with the other victims in the criminal case. Counsel for Claimants agreed to do so regarding the property in Virginia but would not do so regarding the Spanish Fork Property in Utah, asserting that Claimants have a "superior right" to that property. Consequently, on March 27, 2025, the United States filed this motion to strike

Claimants' claim and answers so that the United States could proceed with forfeiture in the criminal case and distribution of the liquidated proceeds equally among the victims.

Just a week before the United States moved to strike Claimants' claims, on March 19, 2025, the United States filed charges against van der Spek in *United States v. Kenny Dirk van der Spek*, No. 2:25-cr-103-HCN (D. Utah), charging him with securities fraud, wire fraud, and money laundering related to the same fraud scheme alleged in this case. A Felony Information in the criminal case seeks criminal forfeiture of the subject properties. Van der Spek pled guilty to Counts I, II, & III of the Felony Information, and the court sentenced him on September 18, 2025. In that action, the United States obtained an Order of Forfeiture on both properties involved in this civil forfeiture action. The United States intends to apply the value obtained from liquidating the subject properties pro rata among victims in the criminal case in satisfaction of the restitution order.

The United States asserts that proceeding with forfeiture in the criminal case will provide a simpler method for victims to receive forfeited funds as compensation. In a civil forfeiture, individual victims would each need to file petitions for remission. In contrast, in a criminal forfeiture, the U.S. Attorney's Office will make a restoration request on behalf of all victims, which will make individual remission petitions unnecessary.

Claimants do not have legal title in the subject properties. They are among several investors in van der Spek's fraudulent scheme. On August 25, 2023, John Valdez made a $20,000 investment with van der Spek and K&K, and on October 27, 2023, John Weist made a $5,000 investment with van der Spek and K&K. However, these two investments were made after the purchase of the subject properties and cannot be traced to the purchase of the properties. On February 7, 2022, Valdez made a $40,000 investment with van der Spek and K&K. While this

investment occurred before the purchase of the subject properties, the length of time and/or intervening deposit and withdrawal activity in van der Spek's Etrade account ending in 7935 that received the investment, and from which the funds were transferred for the properties' purchase, make it impossible to determine whether this investment contributed to the purchase of the subject properties. After Valdez's $40,000 investment was transferred to Etrade 7935, it did not remain in the cash account available for the purchase of the Spanish Fork Property because it was invested into holdings after its deposit. Prior to Valdez's February 7, 2022 investment, thirty nine investor victims made net investments totaling $1,620,902.97, with van der Spek and K&K. Overall seventy six victims invested with van der Spek and K&K for a net loss of $4,114,183.

Claimants claim to have a superior interest to the other victims because they filed a state court action against van der Spek and K&K, on January 31, 2024, approximately four months before the United States filed this in rem civil forfeiture action against the subject properties. Claimants' state court action was an in personam civil action against van der Spek and K&K for breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment, and breach of Utah Code Ann. § 61-1-1 *et seq.* in Third District Court for Salt Lake County, State of Utah.[1]

Five days before the United States filed this civil forfeiture action, on May 17, 2024, Utah State District Judge Heather Brereton granted Claimants' motion for a prejudgment writ of attachment against van der Spek and K&K in the amount of the damages stemming from their breach of contract claim, totaling $108,154.75. But the Prejudgment Writ of Attachment makes no mention of the Spanish Fork Property. The state court docket indicates that the court granted the motion for prejudgment writ of attachment, but there is no prejudgment writ attaching the specific

---

[1] Claimants filed the state civil action with Allen Bickmore, but Allen Bickmore did not file a claim in this action.

Spanish Fork Property. Claimants did not record a Prejudgment Writ of Attachment against the Spanish Fork Property and did not physically post a Prejudgment Writ of Attachment on the Spanish Fork Property. The state court docket also does not reflect that a writ was posted on the Spanish Fork Property.

As stated above, On May 23, 2024, the United States filed its Verified Complaint in Forfeiture in Rem in this action, filed a lis pendens on the Spanish Fork Property in the Utah County Recorder's Office, and had the Complaint physically posted on the Spanish Fork Property. On July 25, 2024, Claimants filed their Notice of Claim and Answer to Complaint for Forfeiture in Rem. Claimants base their claim in the subject properties on an allegation that some or all their investments were "used in acquiring one or both" of the subject properties. On September 5, 2024, Claimants submitted their individual responses to the United States' Special Interrogatories. In the responses, each Claimant claimed an interest in the subject properties from a potential equitable title arising out of the prejudgment writ of attachment or some additional form of title arising because their funds were used to purchase the subject properties. The United States filed its Motion to Strike the claims on March 27, 2025, and the matter was fully briefed by April 23, 2025.

While the parties were briefing the United State's Motion to Strike Claimants' claims to the Spanish Fork Property, Claimants obtained a default judgment against van der Spek and K&K in the state court action. On April 3, 2025, a week after the United States filed its Motion to Strike, the state court entered default judgment against van der Spek and K&K jointly and severally for failure to respond in the action, awarding Valdez $154,538.15, and Wiest $21,217.38. The state court judgment includes treble damages, attorneys' fees, costs, and 12% pre- and post-judgment interest under Utah Code Ann. § 61-1-22, less Valdez's $13,000 withdrawal.

Claimants then sought a Writ of Execution based on the Default Judgment. On May 14,

2025, the state court issued a Writ of Execution that identified the Spanish Fork Property for the first time in the state court action. The Writ of Execution also list the United States as claiming an interest in the property. At that point, this civil forfeiture action had been pending for almost a year. The United States received notice of the Writ of Execution on June 26, 2025. On June 26, 2025, Claimants served the United States with the Writ of Execution and a Notice of Constable Sale. The Notice of Constable Sale scheduled a sale of the Spanish Fork Property on July 16, 2025. Counsel for the United States emailed counsel for Claimants seeking an agreement to postpone any sale of the Spanish Fork Property until the resolution of the civil forfeiture proceedings. At the time, the United States' Motion to Strike Claimants' claim to the Spanish Fork Property was pending. Counsel for Claimants did not respond. The United States asked this court to enter a restraining order to prevent the Spanish Fork Property from being sold pending the resolution of this action. This Court entered a Post-Complaint Restraining Order under 18 U.S.C. § 983(j)(1)(A) on July 1, 2025.

Claimants filed an objection to the court's restraining order. Claimants' Objection stated, among other arguments, that the state court's in rem jurisdiction over the Spanish Fork Property, "established by the default judgment, precludes federal interference under the 'prior exclusive jurisdiction' doctrine.'" That Objection was Claimants' first challenge to this court's exercise of jurisdiction over the Spanish Fork Property in this civil forfeiture action. At that time, this action had been pending for over a year.

**DISCUSSION**

The United States filed its Motion to Strike Claims and Answers in this matter almost a year ago. After several delays in hearing that motion, the Third-Party Claimants filed their motion challenging whether the matter should go forward in this court and the parties agreed to brief that

issue before hearing the motion to strike. The court, therefore, will address Third-Party Claimants'
motion to vacate first.

### Third-Party Claimants John Valdez and John Wiest's Motion to Vacate 1) the Ex Parte Temporary Restraining Order, and 2) the Government's Lis Pendens

Claimants contend that the Prior Exclusive Jurisdiction Doctrine ("PEJD") prohibits this
court from exercising control over the Spanish Fork Property. Under this doctrine, when a
court—state or federal—has assumed jurisdiction over property, requiring control of that property
to grant relief, no other court may exercise jurisdiction over the same res in a manner that interferes
with the first court's control. *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 195-96 (1935).
*Penn Gen* explains that where the judgment sought is in personam, "both a state court and a federal
court having concurrent jurisdiction may proceed with the litigation." *Id.* "But if the two suits are
*in rem* or *quasi in rem*, requiring that the court or its officer have possession or control of the
property which is the subject of the suit in order to proceed with the cause and to grant the relief
sought, the jurisdiction of one court must of necessity yield to that of the other." *Id.* To avoid
conflicts between the two court systems, " the court first assuming jurisdiction over the property
may maintain and exercise that jurisdiction to the exclusion of the other." *Id.*

Claimants assert that the PEJD applies whenever "to give effect to its jurisdiction, the court
must control the property." *United States v. Bank of N.Y. & Trust Co.*, 296 U.S. 463, 477 (1936).
Claimants argue that the state court's prejudgment writ initiated a quasi in rem proceeding and was
issued a week before this in rem action began. But the state court's order granting the issuance of
a prejudgment writ of attachment did not identify the Spanish Fork Property.

The United States knew of the state court's actions. However, the United States did not
intervene, remove, or seek to set aside the state court's writ. By taking no action, Claimants assert
that the United States waived the right to do so. The property in both actions is the same, it is

required to make Claimants whole, and the state action was filed before this action. Therefore, Claimants assert that by preventing enforcement of the state court's Prejudgment Writ of Attachment and subsequent Default Judgment and Writ of Execution, this court is directly interfering with the state court's possession and administration of the res in violation of the PEJD.

The United States argues that the Claimants have waived any challenge to this court's jurisdiction and, even if the court addresses the merits, Claimants motion fails. Under Supplement Rule G(5)(B), a "claimant waives an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in the answer," "within 21 days after filing the claim." Claimants filed their claim on July 23, 2024. Therefore, under the rule, Claimants had until August 13, 2024, to challenge the court's in rem jurisdiction. Claimants made no such challenge within the timeframe. Instead, Claimants admitted to the court's in rem jurisdiction in their Answer, filed with their claim on July 23, 2024. Claimants did not raise the PEJD and challenge this court's exercise of jurisdiction over the property until its objection to the restraining order in this case on July 11, 2025, almost a year after Claimant's filed their claim and answer. Claimants did not file this motion challenging the court's in rem jurisdiction until January 20, 2026, approximately a year and a half after filing their claim. These challenges to the court's in rem jurisdiction are untimely under the rule and Claimants have waived any right they had to challenge the court's jurisdiction.

The notes to Rule G provide that "[f]ailure to present an objection to in rem jurisdiction or to venue by timely motion or answer waives the objection." Supp. Rule G Notes Subdivision (5), ¶ (b). A party may move to amend its answer, and the "amendment should be permitted only if it is permitted as a matter of course under Rule 15(a)." *Id.* Under Rule 15(a), " a party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading

is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a).   In this case, the 21-day deadline under Rule 15(a) for Claimants to amend their answer has long since passed. Unlike subject matter jurisdiction, challenging in rem jurisdiction is a waivable defense.

Numerous other courts have declined to consider in rem jurisdiction challenges made outside the proscribed timelines of Rule G. In *United States v. $10,160.00 in U.S. Currency*, the court found that the Claimant had waived an objection to in rem jurisdiction based on untimeliness because the answer objecting to the complaint was filed 135 days after the complaint's filing. No. 3:11-CV-1612-VLB, 2012 WL 3608578, at *2 (D. Conn. Aug. 22, 2012) (unpublished). In *United States v. Real Prop.*, No. 6:18-CV-315-REW, 2021 WL 144245, *12 (E.D. Ky. Jan. 15, 2021) (unpublished), the court recognized that, unlike subject matter jurisdiction, objecting to in rem jurisdiction is a waivable defense.

Even if the court was to consider the merits of the argument, the factual circumstances in this case do not support Claimants' position. In response to some of the Claimants factual allegations, the United States asserts that it is unaware of any action by Claimants prior to the filing of this civil forfeiture complaint to attach the Spanish Fork Property utilizing a Prejudgment Writ of Attachment. The docket in the state court action does not reflect that the Prejudgment Writ was attached to the Spanish Fork Property in any way. The Prejudgment Writ makes no mention of the Spanish Fork Property, and the Claimants did not follow the rules for having the writ properly issued or attached to the subject property. Claimants also failed to record the writ in the property records or post a copy of the writ on the Spanish Fork Property prior to the filing of the civil forfeiture complaint. Recent documents recorded in Utah County property records do not reflect

9

the recording of any writ by the Claimants.

Claimants argue that the requirements under Utah Rule of Civil Procedure 64(a) and (d) do not apply to its Prejudgment Writ of Attachment under Utah Rule of Civil Procedure 64C, but Rule 64 specifically states that it applies to Rule 64C. Rule 64C also states that all the provisions in Rule 64A apply to a Writ of Attachment. Under these rules, a writ is effective "upon service." Utah. R. Civ. P. 64(d)(3)(A). Moreover, the writ is issued by the clerk of court and must contain a detailed description of the property. *Id.* 64(d)(1), (2).

The state court docket also does not reflect that the writ was posted on the property. The docket notes the granting of prejudgment writ on May 17, 2024, but no entry after that verifying the posting of the writ on the Property. In contrast, the federal complaint was posted on the property on May 28, 2024, and the United States filed a lis pendens regarding the federal forfeiture action in the Utah County property records.

The state court action, though filed first in time on December 22, 2023, was an in personam proceeding seeking damages against van der Spek and his company. The damages sought in the state action did not implicate any exercise of in rem jurisdiction. *See Derma Pen LLC v. 4EverYoung Ltd.*, No. 2:13-CV-00729-DN-EJF, 2015 WL 791595, at *3 (D. Utah Feb. 25, 2015) (unpublished) (courts look to the judgment sought to determine whether a court has assumed jurisdiction and money damages are in personam). In general, "the pendency of a prior suit does not bar another suit for the same cause of action in a different court having concurrent jurisdiction." *United States v. One Parcel Prop. Located at Lot 85, Cnty. Ridge*, 100 F.3d 740, 742 (10th Cir. 1996). In the case of in rem jurisdiction, the first court to exercise in rem jurisdiction "over the property has the power to decide the case without interference from other courts." *Id.*

While the state court granted a motion for a prejudgment writ of attachment in an in

personam action against van der Spek and K&K six days before the filing of the federal civil

forfeiture action, the writ did not mention the Spanish Fork Property and was not issued or served

on anyone in connection with the Spanish Fork Property. That general writ did not give the state

court in rem jurisdiction over the Spanish Fork Property or be considered an exercise of in rem

jurisdiction over the Spanish Fork Property.  The United States' jurisdiction over the Spanish

Fork Property is superior to any state court jurisdiction over the Spanish Fork Property because the

federal court was the first court to exercise in rem jurisdiction over the Spanish Fork Property.

 In this case, the state court that originated the prejudgment writ of execution was not

simultaneously exercising in rem jurisdiction over the Property at the time this court obtained its in

rem jurisdiction. Under 18 U.S.C. § 985(c), in rem jurisdiction is conclusively established by a

federal court once a notice of the civil forfeiture complaint is posted on the property. The U.S.

Marshals Service posted a copy of the Complaint on the Subject Property on May 28, 2024.

 Claimants argue that under the PEJD, the state court acquired exclusive control over the

Property when it issued a prejudgment writ of attachment in the state court action. But Claimants

reliance on PEJD is misplaced. Claimants entire motion is predicated on the assertion that their

state court lawsuit constitutes a "quasi in rem" action. But they fail to cite a single statute or case

that supports this characterization of what is a standard breach of contract and fraud suit, which is

an in personam, not an in rem, action. Claimants fail to explain how an action seeking money

damages against defendants for wrongdoing transforms into an action against the property itself.

They also fail to explain how a prejudgment writ issued in such context conveyed in rem

jurisdiction over the Property to the state court.

 Even if a prejudgment writ of attachment could create in rem jurisdiction, Claimants

failure to comply with the codes governing attachment prevented the state court from obtaining in

rem jurisdiction over the Spanish Fork Property. Claimants did not serve, post, or record the writ in general or in connection with the Spanish Fork Property. The Utah Supreme Court has offered its own skepticism that a prejudgment writ of attachment could be used as a basis for in rem jurisdiction. *Aequitas Enters., LLC v. Interstate Inv. Grp., LLC*, 2011 UT 82, ¶ 22, 267 P.3d 929-30 (characterizing a prejudgment writ as a proceeding sought "as prejudgment relief in a breach of contract action—one that cannot be characterized as an action in rem"). The prejudgment writ provisions do not mention anything about in rem jurisdiction. *Savely v. Utah Highway Patrol*, 2018 UT 44, ¶ 19, 427 P.3d 1174, 1178 (in rem jurisdiction requires exclusive possession or control over the property; a state statutory scheme is one source for determining whether a state court has in rem jurisdiction including whether state law expressly provides for in rem jurisdiction). In contrast, the federal statute underlying this civil forfeiture action, 18 U.S.C. § 985(c)(3), specifically conveys in rem jurisdiction upon the posting of the complaint.

Whether a court can exercise quasi in rem jurisdiction over property is entirely dependent upon whether the court exercises actual or constructive control over the property. *See Penn. Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 195 (1935) (claim of quasi in rem jurisdiction requires court to "have possession or control of the property which is the subject of the suit"). Without such possession or control, a court cannot claim the exclusive jurisdiction necessary to oust another court from proceeding. *Id.*

The power of attachment is strictly circumscribed by the legislative grants found in Utah Code Title 78B and the procedural mechanisms in Rule 64, 64A, 64C, and 69A of the Utah Rules of Civil Procedure. *Nonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 35, 305 P.3d 196, 206. The statutory basis of prejudgment writs dictates that the court's power over the property is only conditional; it exists only so long as the strict procedural requirements of the law are met. *See Bank*

*of Ephraim v. Davis*, 581 P.2d 1001, 1006 (Utah Sup. Ct. 1978) (attachment did not occur because the plaintiff failed to comply with Utah Rule 64C(h)).

These rules and statutes reinforce the principle that a court's control over property—and thus its ability to exercise jurisdiction over it—is inextricably linked to the act of seizure. Utah R. Civ. P. 64(a)(9). By defining property specifically in the context of its availability for seizure, the rules contemplate that a court's authority over that property under a writ is only realized when the property is specifically described and actually brought under the court's dominion. For prejudgment writs, seizure and control of the property is obtained by "recording the writ and a description of the property with the county recorder and leaving the writ and description with an occupant of the property." Utah R. Civ. P. 69A(b).

In this case, Claimants' prejudgment writ did not describe the Spanish Fork Property in the written court order, and it was not recorded in Utah County or left with an occupant of the Property. Because prejudgment writs require strict compliance with their authorizing statutes to affect property, Claimants failure to comply with these requirements prevented the state court having dominion over this specific property. Therefore, the state court did not have in rem jurisdiction over the Property before this court acquired in rem jurisdiction over the Property. It is not true that the state and federal actions involved the same property. Claimants' state court action was an in personam action seeking a personal judgment against van der Spek and his company for breach of contract and fraud. In this case, the civil forfeiture action is against the Property.

Claimants contend that the United States acknowledged that they had a judgment against van der Spek in an email on July 18, 2024. However, it is undisputed that Claimants did not obtain a judgment in the state court action until April 3, 2025. The United States asserts that the reference to "judgment" in the email is a mistaken conflation with other potential claimants counsel was

aware of and working with at the same time as Claimants. Unlike Claimants, those potential claimants did have a judgment against van der Spek and his company, which they had obtained on May 21, 2024, before the filing of the civil forfeiture complaint. These potential claimants had also obtained a writ of execution, to execute their judgment, and had taken steps to execute the writ on the Property. Based on the case law and authorities the United States' counsel shared with their attorney, those potential claimants elected to stand down on their writ of execution, forgo the filing of a pointless claim in this civil forfeiture case, and to instead share in the proceeds from the sale of the defendants in rem pro rata with other victims. Claimants did not obtain their judgment until almost a year later, on April 3, 2025, and counsel's characterization or mischaracterization of the status of the state court action has no legal relevance to the determination of which court first had in rem jurisdiction over the Spanish Fork Property.

The United States shared the same case law and authorities it shared with the other counsel with Claimants' counsel. But Claimants did not agree to relinquish their rights to make claims and in fact made claims in this action. The Claim and Answer admit that this court has jurisdiction. The United States, therefore, filed its Motion to Strike Claim and Answer. Claimants did not raise any issue regarding this court's jurisdiction in any of their pleadings until July 11, 2025, when they filed their opposition to the restraining order, 14 months after the Complaint was filed. The United States promptly responded to those objections on July 22, 2025. Claimants filed no reply. Claimants' first action alleging a jurisdictional issue properly occurred on January 20, 2026, almost 20 months after the complaint's filing, when they sought to vacate the restraining order and lis pendens. Meanwhile, the United States' ability to compensate over 70 victims using the only known assets available to compensate them has been delayed.

The court concludes that the PEJD does not prevent this court from exercising jurisdiction

over the Spanish Fork Property. The state court action was an in personam action against van der Speck and K&K. It was not an in rem action against the Spanish Fork Property. This action against the Spanish Fork Property had been filed for a year before Claimants identified the Spanish Fork Property in their Writ of Execution after they obtained Default Judgment in the state court action, which was after the United States had already moved to strike their claim against the Spanish Fork Property in this action. Claimants'' Prejudgment Writ of Attachment in the state court action never mentioned the Spanish Fork Property and Claimants never sought to properly serve or act upon the state court's order granting a prejudgment writ. Therefore, the court denies Claimants' Motion to Vacate the court's restraining order and the United States' lis pendens.

**United States' Motion Pursuant to Rule G(8)(c)(ii)(B) to Strike Claims and Answers**

Pursuant to Rule G(8)(c)(ii)(B) of Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the United States moves the court to strike Claimants' claims and answers because they lack Article III standing and do not have the right to contest this civil forfeiture action. Rule G(8)(c)(ii) provides three alternative ways for the United States to challenge a claimant's standing to intervene in a civil forfeiture action: (1) by filing a motion for judgment on the pleadings: (2) by requesting an evidentiary hearing at which the claimant must establish his standing by a preponderance of the admissible evidence; or (3) by filing a motion for summary judgment.

A claimant in a civil forfeiture action has the burden at all stages of the proceedings to prove by a preponderance of the evidence that he has Article III standing to make a claim to the property sought for forfeiture. To establish Article III standing "at the summary judgment stage, a claimant must prove by a preponderance of the evidence that he has a facially colorable interest in the res such that he would be injured if the property were forfeited to the United States; otherwise,

no case or controversy exists capable of federal court adjudication." *United States v. $148,840.00 in United States Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008). If Claimants lack standing, then the court has no jurisdiction to address their claims. *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078-79 (10th Cir. 2009).

The law excepts from forfeiture the ownership interest of two types of innocent owners. The first is an owner who, as relevant here, acquired its interest in the property subject to forfeiture at the time of the illegal conduct and who "did not know of the conduct giving rise to forfeiture." 18 U.S.C. § 983(d)(2). The second is an owner who, as relevant for this motion, acquired his interest in the property subject to forfeiture "after the conduct giving rise to the forfeiture" and who was a bona fide purchaser for value that "did not know and was reasonably without cause to believe that the property was subject to forfeiture." *Id.* § 983(d)(3)(A).

An "owner" under Section 983 means: "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." An "owner" under Section 983 does not include: "(i) a person with only a general unsecured interest in, or claim against, the property or estate of another; (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or (iii) a nominee who exercises no dominion or control or control over the property."

**1. Standing**

The United States argues that Claimants lack Article III standing to make a superior interest claim in the subject properties under 18 U.S.C. § 983(d)(2)(A) because they have neither legal nor equitable title under state law that would give them a superior interest in the subject properties. Under 18 U.S.C. § 981(f), commonly referred to as the relation-back doctrine, the

United States' interest in the proceeds of van der Spek's fraud scheme vested upon the commission of van der Spek's scheme, including the $1,620,902.97 of fraudulently induced investments from 39 victims prior to Valdez's February 7, 2022 investment. The United States' interest arose in those proceeds under Section 981(f). Consequently, the United States already had an interest in the funds used to purchase the subject properties at the time those properties were purchased.

In determining the ownership interest of claimants, state law applies. *United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008) ("We recognize that in federal forfeiture proceedings, ownership interests (including constructive trusts) are defined by state law.").   If a claimant has an interest under state law, federal law determines whether the interest under state law is sufficient for the claimant to prevail under the innocent owner provisions in 18 U.S.C. § 983(d).

Here, state law does not give Claimants a superior interest in the subject properties through either legal or equitable title. Claimants do not have legal title to the property, but they suggest that because their funds were used to purchase the subject properties that they possess some "additional forms of title ownership in the subject property." Utah courts have granted victims of fraud equitable title through constructive trusts to prevent unjust enrichment. Under Utah law, a court may impose an equitable constructive trust when "there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior." *Wilcox v. Anchor Wate, Co.*, 164 P.3d 353, 362 (Utah 2007).

According to the Utah Supreme Court, "[s]uch trusts are usually imposed where injustice would result if a party were able to keep money or property that rightfully belonged to another." *Id.* Aside from Claimants not qualifying for a constructive trust because they cannot trace their specific investments into the purchase of the subject properties, van der Spek will not be unjustly

enriched if a constructive trust is not imposed. Criminal forfeiture of the subject properties has been ordered in the criminal case against Van der Spek. Accordingly, Utah law's primary rationale for imposing a constructive trust—prevention of the wrongdoer's unjust enrichment—is absent. Furthermore, there is no possibility of injustice resulting because the United States has secured the subject properties through its civil and criminal forfeiture actions to compensate all the victims of van der Spek's criminal scheme, including the Claimants, on a pro rata basis in the restoration/remission process.

Claimants' standing cannot be based on a constructive trust because that would violate the system Congress has put in place for the Attorney General to distribute property pro rata pursuant to petitions for remission. Claimants assert that they will be punished if the court does not recognize their constructive trust. But this argument ignores the longstanding procedures Congress put in place to compensate all victims. In *United States v. Approximately $133,803.53 in U.S. Currency (Flagstar)*, 683 F. Supp. 2d 1090 (E.D. Cal. 2010), a district court rejected the standing of an investment fraud victim (Flagstar) based on a constructive trust claim for reasons this court should also rely on to reject Claimant's constructive trust claims in this case.

In that case, Flagstar loaned funds through a line of credit for supposed real estate transactions. *Id.* at 1092. Because of misrepresentations by bad actors, the mortgage company who obtained the funds from Flagstar released funds for the fake real property transactions not realizing the funds were caught up in a large, multi-tiered Ponzi investment scheme. *Id.* at 1092-93. The United States seized funds from two bank accounts related to the investment fraud, including the account into which Flagstar's funds were deposited. *Id.* at 1092. Flagstar claimed an interest in the seized funds as a constructive trust beneficiary. *Id.* at 1093. However, the court found that Flagstar lacked prudential standing and granted the government's motion to strike Flagstar's claim. *Id.* at

18

1094-97.

The *Flagstar* court found that Flagstar lacked prudential standing because its claim did not fall within the zone of interest protected by the law it invoked. *Id.* The court based this conclusion on the forfeiture/remission framework Congress established in April 2000. "In April 2000, Congress amended 18 U.S.C. § 981 to provide that forfeited assets could be restored to crime victims of the offense giving rise to forfeiture. *See* 18 U.S.C. § 981(e)(6) ("The Attorney General . . . is authorized to retain property forfeited pursuant to this section, or to transfer such property on such terms and conditions as he may determine as restoration to any victim of the offense giving rise to forfeiture.") In adopting this forfeiture/victim remission model, Congress granted the Attorney General sole discretion to address claims by victims through a remission process that occurs after the successful prosecution of the forfeiture case. *See* 18 U.S.C. § 981(d)." Flagstar, 683 F. Supp. 2d at 1094-95. The court found that "Congress's creation of a remission process for crime victims and explicit delegation of responsibility to the Attorney General over petitions filed pursuant to that process, combined with the absence of statutory language negating the application of the prudential standing doctrine to potential claims of victims, compels the conclusion that the claimant in this case lacks prudential standing." *Id.* The *Flagstar* court further reasoned that recognizing Flagstar's constructive trust claim would convert the case into a "trust administration" that disregarded the procedures put in place by Congress. *Id.* at 1095. Such a conversion was not necessary "to protect the individual rights of victims/investors nor judicially efficient." *Id.* at 1095-96.

The *Flagstar* court's reasoning and decision is on all fours with this case. The *Flagstar* court made its decision even though it appeared that Flagstar could directly trace its funds to the funds the United States seized. Here, Claimants claim of tracing is entirely speculative. Claimants

19

propose a system where the first victim to claim a fraudster's property would be the victor of the whole pie, but the system put in place by Congress allows the Attorney General to divide that pie among all the victims equally or proportionally. Claimants assert that they should be rewarded for their diligence, but the result of their diligence is an unnecessary duplicative and inefficient "pay-for-play" legal approach. Claimants ask for an equitable constructive trust that would give rise to inequity between the victims. The court rejects Claimants' approach in favor of Congress' established remission procedures, which are designed to provide a recovery for all victims. Whether the court gives effect to the Congressional system through prudential standing as the *Flagstar* court did, or under Article III standing because applying an equitable constructive trust would give rise to inequity, the result is the same: the Claimants lack standing.

Even if Claimants could meet the constructive trust elements, the equities do not favor the creation of such a trust. Constructive trusts are legal fictions created by courts to avoid unjust enrichment "and compel restitution of property that in equity and good conscience does not belong to the Defendant." *Andrews*, 530 F.3d at 1237. Such a remedy is proper when a recipient has defrauded a claimant. *Id.* In the case of an insolvent recipient, a constructive trust gives claimants priority over other creditors. *Id.* However, "a court should not employ an equitable fiction 'to elevate [one] claim over the claims of other creditors if those creditors are similarly situated.'" *Id.* at 1238. The ability to trace losses to specific property is irrelevant in imposing a constructive trust if imposing such a trust gives rise to inequitable results. *United States v. Ramunno*, 599 F.3d 1269, 1275 (11th Cir. 2010).

Valdez's and Weist's claims should not be elevated over the claims of other similarly situated investor victims of van der Spek's fraud. Instead, the equities favor the pro rata distribution of recovered funds to all victims, including Valdez and Weist, that the United States

intends to do through the restoration process. Consequently, Claimants have no viable claim of either legal or equitable title that would give them standing to claim a superior interest in the subject properties under 18 U.S.C. § 983(d)(2)(A).

Furthermore, Claimants' assertion that they have a lien on the Utah property is not supported by the facts. Claimants cite a non-existent rule—Utah R. Civ. P. 64C(e)—for the proposition that Utah law treats a writ of attachment as a lien from issuance. On the contrary, Utah R. Civ. P. 69A(b) provides that "[r]eal property must be seized by recording the writ and a description of the property with the county recorder."   Additionally, a judgment lien on real property only arises under Utah law when the judgment is recorded in the county recorder's office. Utah Code Ann. §§ 78B-5-201(3)(a) and 78B-5-202(7)(a). Consequently, Claimants have no lien interest in the Utah property that would give them standing.

Even if Claimants had a lien in the Utah property, it would be subject to the bona fide purchaser requirements of 18 U.S.C. §983(d)(3). Regardless of the interpretation of the relation back doctrine in 18 U.S.C. § 981(f), the timing for determining which innocent owner provision applies to Claimants' lien interest is based on when the lien interest arose, not when the conduct giving rise to the lien occurred. *United States v. One 2004 Land Rover Range Rover, VIN:SALME11464A175730 seized from Douglas Turnage*, No. 07-CV-818S, 2009 WL 909669, at *10 (W.D.N.Y. Mar. 31, 2009), *aff'd sub nom. United States v. One 2004 Land Rover Range Rover*, 369 F. App'x 208 (2d Cir. 2010).

In this case, Claimants' lien interest would have arisen at the earliest on May 17, 2024 upon the state court's entry of the prejudgment writ of attachment or on April 3, 2025 when the state court entered judgment, (if they had been recorded). But both dates are long after van der Spek's crimes were complete. Claimants admit that a judgment lien does not attach until entry and

recording of the judgment.

As explained in *Asset Forfeiture Law in the United States*, Congress "divid[ed] the innocent owner defense into two parts: pre-existing interests are governed by Section 983(d)(2) and after-acquired interests are governed by Section 983(d)(3). Stephan D. Cassella, *Asset Forfeiture Law in the United States*, 1048 (3rd ed. 2022). To be a pre-existing innocent owner, one must be "an owner of the property at the time the crime occurred." *Id.* To have an after-acquired interest, the claimant must have "acquired the property in an arms-length transaction as a bona fide purchaser for value and was unaware that the property was subject to forfeiture. *Id.* In this case, Claimants' lien interest arose long after the Utah property became a proceed of van der Spek's fraud. But, even if their lien interest arose simultaneously with the purchase of the Utah property, Claimants' interest would still be subject to the after-acquired interest provision because the pre-existing interest provision does not apply to criminal proceeds. Consequently, Claimants can only prevail if their judgment lien is a "purchase" under the bona fide purchaser provision of 18 U.S.C. § 983(d)(3). Under Utah law, a judgment creditor is not a bona fide purchaser. *Garland v. Fleischmann*, 831 P.2d 107, 112 (Utah 1992).

Claimants lack Article III standing to claim the subject property as bona fide purchasers under 18 U.S.C. § 983(d)(3)(A) because judgment creditors cannot qualify as bona fide purchasers. Claimants' prejudgment writ of attachment cannot give Claimants an interest in the subject properties. Because the writ was obtained after the United States' interest in the criminal proceeds arose and purchase of the subject properties with those proceeds, Claimants can only prevail if the writ qualifies them as bona fide purchasers for value under 18 U.S.C. § 983(d)(3)(A). Because a prejudgment writ of attachment does not entail a conveyance of property in exchange for valuable consideration, the prejudgment writ does not make Claimants bona fide purchasers

22

under Section 983(d)(3)(A). Numerous federal courts have held in both civil and criminal

forfeiture cases considering a similar bona fide purchaser provision that judgment creditors do not

qualify as bona fide purchasers;

Claimants argue that the United States' equity argument misapplies Utah law. But Utah

law determines what kind of an interest Claimants have, and federal law determines whether that

interest is sufficient. *See United States v. U.S. Currency, $81,000*, 189 F.3d 28, 33 (1st Cir. 1999)

("state law determines [the claimant's] ownership interest in the joint account, but then federal law

determines the effect of his ownership interest on his right to bring a claim).

Claimants make no attempt to show how their funds trace to the purchase of the Virginia

property. As undisputedly shown by the motion, Claimants have not traced any of their

investments to the purchase of the Virginia property, nor do they have any writ, judgment, or lien

that has attached to the Virginia property. Therefore, the court grants the United States' motion as

to that property.

With respect to the Spanish Fork property, Claimants must establish their standing by

submitting evidence that proves they have standing. They cannot simply rely on their pleadings.

Forfeiture proceedings are intended to proceed more expeditiously than typical civil proceedings.

Rule G(6) allows the government to issue special interrogatories as soon as a claim is filed to

scrutinize whether the claimant has a relationship to the property. The rules also allow discovery to

proceed immediately. The provision the United States proceeds under in this motion, Rule

G(8)(c)(ii)(B), allows for expeditious resolution by creating a procedure for testing a claimant's

standing through summary proceedings. Because the United States has propounded evidence that

contradicts Claimants' claim that they can trace their funds into the acquisition of the subject

property, Rule G(8)(c)(ii)(B) obligates Claimants to submit evidence showing the existence of a

material dispute of facts.

Claimant Wiest does not refute in his response the United States' evidence that he cannot trace his funds to the purchase of the subject property. Instead, Wiest makes the unsupported allegation in his opposition that his funds supported the properties' acquisition or upkeep. Wiest's conclusory and unsupported allegation does not raise a dispute of material fact. Valdez's tracing claim is speculative at best and does not raise material disputes of facts. Valdez's tracing argument hinges on speculation that after his funds were invested into holdings, some of them could have funded the Utah property that was purchased six weeks later. Valdez claims that the proximity of his investment supports a plausible link. But these conclusory arguments are contradicted by the evidence the United states submitted and are not supported by any evidence. By not including any evidence in his filing, Valdez has not raised a disputed material fact on the issue of tracing. Therefore, the court does not need to hold a hearing on the constructive trust theory. Because Claimants have failed to provide any evidence to create a material dispute of fact warranting a hearing, the United States' motion to strike is granted.

## CONCLUSION

Based on the above reasoning, United States' Motion Pursuant to Rule G(8)(c)(ii)(B) to Strike Claims and Answers [ECF No. 10] is GRANTED, and Third-Party Claimants John Valdez and John Wiest's Motion to Vacate 1) the Ex Parte Temporary Restraining Order, and 2) the Government's Lis Pendens [ECF No. 29] is DENIED.

DATED this 5th day of March 2026.

BY THE COURT:

DALE A. KIMBALL
UNITED STATES DISTRICT JUDGE

24